UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

FRANCISCO J. JAYME and
ALICIA ROJAS,

     Debtors.

JOE JESS MONGE and
ROSANA ELENA MONGE,

     Plaintiffs,

v.

FRANCISCO J. JAYME and
ALICIA ROJAS,

     Defendants.

Case No. 15-10504-tl7

Adv. No. 15-1079-t

## **OPINION**

Plaintiffs filed a first amended complaint in this adversary proceeding, seeking a judgment denying Defendants' discharge under 11 U.S.C. § 727,[1] and declaring that Plaintiffs' claims are nondischargeable under § 523(a)(2)(A) and (4). Before the Court is Defendants' motion to dismiss the amended complaint because the claims are barred by preclusion principles, the statute of limitations, and the statute of frauds. The Court concludes that many of the issues were adjudicated by a federal district court in Texas. The Court therefore will dismiss all claims in Sections III and IV of the amended complaint, and some but not all of the claims in Section V.

---

[1] Unless otherwise noted, all statutory references are to 11 U.S.C.

## I. FACTUAL ALLEGATIONS

The Court treats the following allegations as true for the limited purpose of ruling on the motion:

Defendant Alicia Rojas is a mortgage broker. Her husband, defendant Francisco Jayme, is a real estate agent. In 2005 or 2006, Plaintiffs contacted Defendants to obtain a construction loan. The parties got to know each other and entered into a joint venture to purchase and develop the Country Cove Subdivision in Sunland Park, New Mexico. Rojas represented the subdivision would cost $300,000, and that she owned a property with $300,000 in equity located at 105 Thoroughbred Court in Santa Teresa, New Mexico (the "Thoroughbred Property"). On or about February 3, 2006, Defendants convinced Plaintiffs to purchase the Thoroughbred Property for $775,000 so that Defendants could invest the $300,000 equity in the subdivision project. Plaintiffs obtained a $775,000 mortgage to finance the purchase. Plaintiffs then leased the Thoroughbred Property back to Defendants, who continued to reside there. Defendants agreed to make the mortgage payments directly to Plaintiffs' lender.

Three months into the lease, and unbeknownst to Plaintiffs, Defendants stopped making the mortgage payments. About a year later, Plaintiffs' lender brought an action to foreclose the mortgage. During this process, Plaintiffs learned that Defendants had not actually owned the Thoroughbred Property at the time of the alleged sale/leaseback. Instead, the Thoroughbred Property had been conveyed to Citibank at a foreclosure sale in November 2005.

In July 2006, Defendants used the proceeds of the sale to Plaintiffs to redeem the Thoroughbred Property. Defendants recorded a deed on July 28, 2006 conveying the Thoroughbred Property to Plaintiffs. This second deed was almost seven months after executing the original deed. Defendants knew they did not own the Thoroughbred Property when they sold

-2-
Case 15-01079-t    Doc 57    Filed 06/09/17    Entered 06/09/17 16:04:00 Page 2 of 11

it to Plaintiffs. Defendants misrepresented their ownership orally and through a fraudulent title commitment, to induce Plaintiffs to purchase the Thoroughbred Property at an inflated price.

Defendants lived in the Thoroughbred Property until January 2015, when Plaintiffs evicted them. The state court awarded $100,000 in unpaid rent and attorneys fees to Plaintiffs.

Plaintiffs allege that Defendants committed other instances of fraud and/or embezzlement in connection with the Thoroughbred Property sale. First, Plaintiffs allege that Defendants used the proceeds of the sale for personal use, including to pay Mr. Jayme's debts. Second, Plaintiffs allege that before the sale, Defendants obtained a $78,000 loan from a third party without Plaintiffs' knowledge or consent, to "pre-qualify" Plaintiffs for the mortgage on the Thoroughbred Property, reimbursed themselves from the sale proceeds, and then requested reimbursement again from Plaintiffs. Third, Plaintiffs allege that in March 2007, Defendants misused Plaintiffs' personal information in an attempt to refinance the Thoroughbred Property and abscond with the loan proceeds.

Plaintiffs also point to various instances of alleged fraud in connection with the parties' joint ventures. In early 2006, the parties agreed to form Monroj Investments Inc. to purchase land for the Country Cove Subdivision. Defendants promised that each party would have a 25% interest in the company and that Rojas would invest $300,000 in Monroj as a capital contribution. Neither of these things happened. Without Plaintiffs' knowledge or consent, Defendants filed a certificate of formation listing six directors/shareholders, which diluted Plaintiffs' ownership/control of Monroj. Defendants also falsified corporate resolutions and caused Monroj to incur debt and pay third parties without Plaintiffs' consent. Third, Defendants stopped paying the subdivision mortgage, causing the property to go into foreclosure before it was developed.

Around the same time the parties formed Monroj, they endeavored to develop commercial

property for a medical clinic. They formed Northeast Patriot Plaza, Inc. to purchase a plot of land for the project in January 2006 (the "Northeast Patriot Project"). Plaintiffs spent a lot of money on the project. As with Monroj, Defendants associated with an undisclosed partner (Maynez Maldonado) to deprive Plaintiffs' of the benefit of their investment. Instead of causing the company to purchase the land, as discussed, Rojas and Maldonado bought the land. Maldonado then signed a deed conveying the land to Rojas as her sole and separate property.

In 2009, Plaintiffs filed a Chapter 11 case in the United States Bankruptcy Court for the Western District of Texas. Plaintiffs filed an adversary proceeding against Defendants in 2010. The proceeding was tried over six days in the fall of 2014. On January 27, 2015, the Texas bankruptcy court issued 182 pages of proposed findings of fact and conclusions of law (the "Findings and Conclusions"). The United States District Court for the Western District of Texas adopted the Findings and Conclusions and issued a final judgment in favor of Plaintiffs, for $757,116, plus prejudgment interest (together with the Findings and Conclusions, the "Judgment"). The money judgment was based on Defendants' breach of the Thoroughbred Property lease, and Defendants' violation of the automatic stay. Defendants appealed several times. The Fifth Circuit affirmed the Judgment on June 14, 2016.

On March 3, 2015, while the appeal was pending, Defendants filed this case. They listed Plaintiffs as general unsecured creditors with a claim of $750,000. Plaintiffs timely filed this adversary proceeding. It is noteworthy that Plaintiffs' nondischargeability claims do not relate to the judgment they got in the Texas litigation. Rather, in Plaintiffs' § 523(a) claims they reassert the allegations made in the Texas proceeding. The Texas court denied all relief based on those allegations.

On October 13, 2016, Defendants moved to dismiss the proceeding, making essentially the

same arguments now asserted. The Court denied the motion, but required Plaintiffs to file an amended complaint with more detailed allegations to support certain claims. Plaintiffs filed an amended complaint on December 7, 2016, asserting claims under § 523(a)(2)(A) (Section III); § 523(a)(4) (Section IV); and § 727(a)(2) - (7) (Section V).

Defendants moved to dismiss the amended complaint, again arguing, inter alia, that the Judgment precludes Plaintiffs' § 523(a) claims. Plaintiffs did not respond to the motion to dismiss.

## II. DISCUSSION

### A. Claim Preclusion.

Defendants assert Plaintiffs' § 523(a) claims[2] are barred by res judicata and/or collateral estoppel, also known respectively as claim preclusion and issue preclusion. This motion to dismiss, unlike the prior motion, refers to the Findings and Conclusions, and to the Judgment. The Court will apply state law to determine whether claim or issue preclusion applies. *See Strickland v. City of Albuquerque*, 130 F.3d 1408, 1411 (10th Cir.1997) (federal courts are to apply to state law preclusion principles); *In re Flanders,* 657 Fed. App'x 808, 821 (10th Cir. 2016) (state law principles governing issue preclusion apply in bankruptcy cases).

Claim preclusion bars re-litigation of any claims that were or could have been adjudicated in a prior proceeding. *Brannock v. Lotus Fund*, 367 P.3d 888, 896 (N.M. App. 2015). Some courts hold that claim preclusion does not apply in § 523(a) actions. *See, e.g., In re Walker*, 416 B.R. 449, 462 (Bankr. W.D.N.C. 2009) ("res judicata [claim preclusion] is inapplicable to a bankruptcy dischargeability proceeding[s]"); *In re Lucas*, 186 B.R. 67, 69 (Bankr. E.D. Va. 1995) (same). They reason that since nondischargeability claims are unique to the Bankruptcy Code, the "same claim" requirement cannot be satisfied. *Id.* Other courts use claim preclusion to establish the

---

[2] Defendants' preclusion arguments must be directed at the § 523(a) claims, as the § 727 claims relate to post-petition transactions and could not be precluded by pre-petition rulings

existence and amount of a debt, but not its dischargeable nature. *See, e.g., In re Crespin,* 551 B.R. 886, 896-897 (Bankr. D.N.M. 2016) (default judgments are given "preclusive effect as to the claim on the debt, but not as to its dischargeability"). Either way, dischargeability must be examined by the bankruptcy court in the first instance, so res judicata cannot be the basis for dismissing the § 523(a) claims.

        B.      <u>Issue Preclusion</u>.

Issue preclusion requires proof of four elements: "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation." *Shovelin v. Cent. N.M. Elec. Co-op., Inc.,* 850 P.2d 996, 1000 (N.M. 1993). "The doctrine[] appl[ies] equally to issues of fact and rulings of law." *SIL–FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990). Issue preclusion can be resolved through a Rule 12(b)(6) motion to dismiss if its application is clear from the prior pleadings. *See Merswin v. Williams Companies, Inc.,* 364 Fed. App'x 438, 441 (10th Cir. 2010) (district court did not err in taking judicial notice of prior pleadings and ruling on preclusion principles in a Rule 12(b)(6) motion).

The first two elements of issue preclusion are met for Plaintiffs' § 523(a) claims against Defendants. First, the parties to be estopped (Plaintiffs) participated in a six-day trial in the Texas bankruptcy court. Plaintiffs brought the action. Second, the causes of action are different. In the Texas adversary proceeding, Plaintiffs asserted, inter alia, state law claims for fraud and breach of fiduciary duty. Here, the claims arise under 11 U.S.C. §§ 523(a)(2)(A) (fraud) and (a)(4) (breach of fiduciary duty). The claims did not arise until Defendants filed bankruptcy.

The Texas proceeding, like this one, dealt with three main real estate parcels: the

Thoroughbred Property; the Country Cove Subdivision; and the Northeast Patriot Project. As shown below, key issues relating to these projects were actually litigated and necessarily determined in the Texas proceeding.

1. <u>Thoroughbred Property</u>. Whether Defendants defrauded Plaintiffs and/or breached any fiduciary duties in connection with the sale and leaseback of the Thoroughbred Property was fully litigated in the Texas proceeding. Plaintiffs asserted in the Texas litigation, as they do here, that Defendants purported to sell the property to Plaintiffs free and clear to raise funds for a joint venture; issued a false deed; concealed the foreclosure and redemption of the Thoroughbred Property; and misdirected $78,000 at closing. *See* Judgment, p. 27-44. The Texas court necessarily determined those issues, finding that there was no fraud because Plaintiffs did not rely on the misrepresentations. The court also found that Plaintiff suffered no damages because of the alleged misrepresentations. *Id.* at 97-101.

With respect to the alleged breach of fiduciary duty, the Texas court found that "there was insufficient believable evidence to find the existence of a fiduciary relationship between the Monges and Rojas/Jayme with respect to the Thoroughbred Property." *Id.* at 103, ¶ 213.

Plaintiffs are precluded from relitigating whether Defendants defrauded them or breached their fiduciary duties in connection with the Thoroughbred Property.

2. <u>The Country Cove Subdivision</u>. The failed Country Cove Subdivision project was also a major focus of the six-day Texas trial. After hearing the evidence, the Texas court found that Defendants had not defrauded Plaintiffs or breached any fiduciary duties with respect to that project. *See* Judgment, p. 140-145. Plaintiffs amplified the allegations to some extent in this Court, referring to falsified corporate resolutions and a certificate of formation that surreptitiously added other shareholders. However, the Texas court considered evidence regarding

the intended ownership structure of the venture and determined that there was no enforceable agreement regarding the acquisition and development of the Country Cove Subdivision. *Id.* at p. 51, ¶¶ 149-154; p. 58-60, ¶¶ 173-178. The Texas court further found that fault could not allocated for the failed Country Cove Subdivision project, which was "a highly speculative venture between the Monges and Rojas/Jayme [that] was doomed from the start." *Id.* at p. 55, ¶ 164. At a minimum, such findings establish that even if Defendants had committed some wrongdoing in connection with the Country Cove Subdivision, there were no damages.

Plaintiffs are precluded from relitigating any fraud or damages issues pertaining to the Country Cove Subdivision.

3. <u>The Northeast Patriot Project</u>. Plaintiffs asserted in the Texas proceeding, as they do here, that Ms. Rojas wrongfully purchased property with an undisclosed partner, Maynez Maldonado, that should have been purchased by Northeast Patriot Project. Once again, the Texas court's ruling prevents Plaintiffs from establishing that the transaction constituted fraud or breach of fiduciary duty. The Texas court found:

- Plaintiffs knew Defendants wished to add Maldonado as a partner. Judgment, p. 61;
- There was no evidence that Plaintiffs had the funds to purchase the property. *Id.*;
- Plaintiffs verbally agreed that Ms. Rojas could obtain a loan and purchase the property in her name until it could be transferred to the Northeast Patriot Project. *Id.* at 62;
- Maldonado and his wife contributed all the cash necessary to purchase the property, and no member of Northeast Patriot paid any funds for the purchase. *Id.* at 63;
- Ms. Rojas never conveyed the property to Northeast Patriot because of an ongoing dispute regarding ownership percentages and because she had to close the purchase immediately. *Id.* at 62;
- Ms. Rojas conveyed the property to Maldonado because he paid the purchase price and held a lien on the property. *Id.* at 64; and
- Maldonado remains the owner and continues to pay property taxes. *Id.*

The Court is skeptical that such circumstances could form the basis for a § 523(a) claim.

Even if they showed some wrongdoing, moreover, the Texas court's findings and conclusions preclude any award of damages. The Texas court ruled:

> Ms. Monge and Ms. Rojas, along with other potential investors, formed Northeast Patriot – a new corporate entity with no history of success in commercial property development – for the purpose of obtaining the financing to purchase and develop the [medical center]. The potential purchase and development … was a highly speculative venture. Mr. Monge was not a licensed or experienced commercial builder or developer…. And [Defendants]… did not appear to have any real experience developing commercial real property like the … envisioned medical clinic…. As a result, the Court concludes that any award of damages to the Monges relating to the …Northeast Patriot would be speculative and inappropriate.

*See* Judgment, p. 164. Plaintiffs are not entitled to a second bite at the apple on the key fraud, breach of duty, and damages issues involving the Northeast Patriot Project.

The Court concludes that Plaintiffs' § 523(a) claims, which are based on alleged wrongdoing in connection with Thoroughbred Property, the Country Cove Subdivision, and the Northeast Patriot Project, are barred by the doctrine of issue preclusion. Because those claims will be dismissed, the Court need not determine whether they are barred by the statute of limitations or the statute of frauds.

C. Section 727 Claims.

In the complaint, Plaintiffs also argue Defendants' discharge should be denied under § 727(a)(2) - (7). The motion to dismiss focuses primarily on Plaintiffs' § 523(a) claims. The only argument relevant to the § 727 claims is that the allegations fall short of the pleading standards set forth in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). The Court previously determined that the § 727 claims were not well plead, but allowed Plaintiffs to amend the complaint. The Court explained that the "specific allegations in the complaint" must "plausibly support a legal claim for relief." *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008) (citing *Twombly,* 550 U.S. at 570). To survive a motion to dismiss under Rule 12(b)(6), the complaint must allege all

facts necessary to support the required elements under the legal theory proposed. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

The amended complaint recites that Defendants filed bankruptcy schedules reflecting that they do not own real property, when in fact they own five houses in El Paso, Texas. Defendants allegedly own the properties under various aliases, in an effort "to hinder and conceal property of the debtor." *See* Amended Complaint, p. 20 ¶ 3. The complaint also alleges that Francisco Jayme's income is substantially higher than the scheduled figure of $700 per month. *Id.* at ¶¶ 5-7.

At best, these allegations form the basis for claims under §§ 727(a)(2) and (a)(4). A discharge may be denied under § 727(a)(2) where the debtor concealed property of the debtor with the intent to hinder or defraud creditors. Section 727(a)(4) relates to false oaths, including misrepresentations in a debtor's statements and schedules. Plaintiffs' allegations do not state a claim under the remaining subsections of § 727. There are no allegations that Defendants: failed to keep records (§ 727(a)(3)); failed to explain a loss of assets (§ 727(a)(5)); refused to obey a court order or testify (§ 727(a)(6)); or committed any of the aforementioned prohibited acts concerning an insider (§ 727(a)(7)). Plaintiffs' claims under those subsections of § 727 must be dismissed pursuant to Rule 12(b)(6), made applicable by Bankruptcy Rule 7012.

### III.  CONCLUSION

The essential allegations underpinning Plaintiffs' § 523(a) claims re-hash issues that have already been tried and ruled on by the Texas court. The claims therefore are barred by the doctrine of issue preclusion, and must be dismissed pursuant to Rule 12(b)(6). Further, the complaint fails to state a claim under §§ 727(a)(3), (a)(5), (a)(6), and (a)(7). Whether Defendants violated §§ 727(a)(2) and/or (a)(4), however, survives for trial. The Court will enter a separate order on the motion to dismiss.

/s/ David T. Thuma
_____
Honorable David T. Thuma
United States Bankruptcy Judge

Entered: June 9, 2017

Copies to:

Joe Jesse Monge and Rosana Elena Monge
P.O. Box 13051
El Paso, TX 79913

Francisco Javier Jayme and Alicia Rojas
103 Horseshoe Ct.
Santa Teresa, NM 88008